(Decided 1st March, 1877.)

JOHN MERRYMAN, Trustee, and THOMAS D. COCKEY and Wife *vs.* VINCENT T. SHIPLEY.

*Construction of Agreement—Express and implied Covenant.*

G. as trustee for C., and R. in his own right, were the owners in fee of adjacent lands in Baltimore County. R. having certain limestone quarries on his land, by lease made between G. of the first part, C. of the second part, and himself of the third part, leased from G and C. certain quarry rights on their land for the period of 15 years, including certain water works, &c., on the lands of the lessors. There was a clause in the lease by which the lessors granted to R., his heirs and assigns, owners of the adjoining tract of land, the *perpetual* right and privilege, after the determination of said lease, to use one-fourth of the water power produced by means of said water works, for the sole purpose of pumping out water from the quarries then or thereafter to be opened on R's land, the trustee reserving the other three-fourths of said water power for such use as he, his heirs, successors or assigns might deem proper for the purposes of the trust. And it was thereby expressly agreed, "that after the expiration of the exclusive right to use the whole of said water power hereinbefore granted, and demised for fifteen years aforesaid, whether by effluxion of time, surrender or otherwise, that the expenses of keeping and maintaining said water power fit for use; and of cleaning out the race and repairing the dam, trestle work, tail-race, water wheel, mill house, &c., shall be borne by the party of the first part hereto, his heirs, successors and assigns, and by the party of the third part

his heirs and assigns, owners of the said lands, marked on said plats as William Robinson's land, in the proportion of three-fourths to the party of the first part, and one-fourth to the party of the third part." The term of the lease having expired, and the water works having been abandoned, and permitted to fall into decay with the consent of all parties, the trustee and *cestui que trust* sued the assignee of R's land in covenant to recover *one-fourth part of the estimated costs of repairs.* HELD :

1st. That the stipulation in the lease in regard to the proportion of expense to be borne by the respective parties, could not be construed as an *express agreement on the part of R. to make the repairs.*

2nd. That there was nothing on the face of the lease from which such agreement could be implied.

APPEAL from the Superior Court of Baltimore City.

The appellants sued the appellee as assignee of William Robinson, in an action of covenant and declared against him as follows :

That whereas, heretofore, to wit, on the 10th day of April, eighteen hundred and fifty-seven, at Baltimore County aforesaid, by a certain indenture then and there made between the said William Robinson of the one part, and one William W. Glenn, (of whom the said John Merryman is assignee or successor,) and the said Thomas Dye Cockey and Sally, his wife, of the other parts, first and secondly respectively, the counter part of which said deed, sealed with the seal of the said William Robinson, the said plaintiffs now bring here into Court, the date whereof is the day and year aforesaid, the said William W. Glenn, Thomas Dye Cockey and Sally, his wife, did grant and convey to the said William Robinson, his heirs and assigns forever, owners of the lands marked on the plat accompanying and being a part of said deed and annexed thereto, as "William Robinson's Land," the full, perfect and perpetual right and privilege to use the one-fourth part of the power produced by the water flowing as before mentioned in said deed and shewn on said plat annexed thereto, through or by means of the artificial

trestle works, tail-race, dam, water·wheel and mills, as aforesaid mentioned in said deed, for the sole purpose of pumping out water from the quarries, now or hereafter to be opened on the lands of the said William Robinson, marked on the said plat thereto annexed as "William Robinson's Land," and which pumping will, and is so intended, benefit the quarries on the said lands of the parties of the first and second parts thereto, inasmuch as the lands of the said William Robinson are lower than the said lands of the parties of the first part thereto—the party of the first part thereto reserving the other three-fourths of said water power, and the benefit of the tail-race aforesaid, for such uses as he, his heirs, successors or assigns, may see proper to put the same, for the uses of his trust aforesaid.

And it was further expressly agreed, that after the expiration of the exclusive right to use the whole of said water power thereinbefore granted and demised for fifteen years, as aforesaid mentioned in said deed, whether by — of time, surrender or otherwise, that the expenses of keeping and maintaining said water power fit for use, and of cleaning out the race and repairing the dam, trestle work, tail-race, water wheels, mill house, &c., &c., shall be borne by the party of the first part thereto, his heirs, successors and assigns, and by the said William Robinson, his heirs and assigns, owners of the said lands marked on said plat as "William Robinson's Land," in the proportion of three-fourths of the party of the first part thereto, and one-fourth to the said William Robinson, their respective heirs, successors and assigns, as by the said deed, reference being thereto had, will, amongst other things, more fully appear. By virtue of which said deed the said William Robinson entered into and upon all and singular the demised premises, rights and privileges, with the appurtenances, and was thereof possessed ; and the said plaintiff further saith, that all the rights, privileges,

and advantages, agreements, covenants and undertakings
of the said William Robinson, have since devolved, been
assigned, transferred, and made over to the said defendant,
Vincent P. Shipley; and the said plaintiff further saith,
that afterwards, to wit, on the eleventh of March, 1869,
and from and after the said period last mentioned, the
said water power, race, dams, trestle work, tail-race, water
wheels, mill house, &c., &c., in said deed mentioned,
became and were greatly ruinous, and for want of needful
necessary reparations and amendments of the same, and
keeping and maintaining the said water power fit for use,
and cleaning out the race and repairing the dams, &c.,
&c. Yet the said defendant hath not repaired and
amended the same, nor kept and maintained the same
fit for use, nor hath he, the said defendant, contributed
his quota of one-fourth of the expense for pumping, &c.,
nor any part thereof; but on the contrary, hath suffered
and permitted the same, and every part thereof, to remain
and continue so ruinous and unfit for use, from thence
hitherto, to wit, at the county aforesaid, contrary to the
form and effect of said deed, and of the said covenant of
the said William Robinson, in that behalf made as afore-
said; whereby the said plaintiffs say they have damage,
and are worse, to the value of five thousand dollars, and
therefore they bring suit, &c.

The defendant prayed and obtained oyer of the lease,
(the contents of which are sufficiently set forth in the
opinion of the Court,) and then filed the following pleas:

" 1. That after the making of the said indenture in the
declaration mentioned, and before the time of the said
alleged breach of agreement, and before the said assign-
ment from the said Glenn to the said John Merryman, the
said William Robinson surrendered to the said William
W. Glenn, Thomas Dye Cockey, and Sally, his wife, the
said demised premises, and all the residue then to come
and unexpired of the said term of years, and all the right,

privileges and advantages by the said indenture granted or conferred to or upon the said William Robinson; and the said William W. Glenn, Thomas Dye Cockey, and Sally, his wife, then accepted such surrender and took possession of the said premises.

" 2. And for a second plea, the defendant says, that before the alleged breach of the said agreement in the said indenture contained, and before the said assignment by the said William W. Glenn to the said John Merryman, and before the defendant acquired any interest in the said lands, or any of them, the said demised premises, and all the residue of the said term of fifteen years, then to come and unexpired therein, and all the right and privileges by the said indenture granted or conferred to or upon the said William Robinson, his heirs or assigns, were duly surrendered by the said William Robinson, to the said William W. Glenn, Thomas Dye Cockey, and Sally, his wife, by act and operation of law—that is to say, by the said William Robinson then giving up to the said William W. Glenn, Thomas Dye Cockey, and Sally, his wife, and they, the said Glenn, Thomas Dye Cockey, and Sally, his wife, then accepting from the said William Robinson, the possession of the said demised premises, and all the said rights and privileges, with the intention respectively of then putting an end to the said term.

" 3. And for a third plea, the said defendant says, that the said term of years in the said indenture mentioned, was not, nor was any part thereof, nor were the said rights and privileges, nor any of them by the said indenture, demised or granted to the said William Robinson, in, upon, or in respect to said lands of the plaintiffs, ever assigned, transferred or made over to the defendant, nor was he ever at any time heretofore, nor is he now possessed thereof, or of any right, interest or estate whatever, in, to or upon the said lands of the plaintiffs, or any part thereof, under the said indenture in the said declaration mentioned.

"4. And for a fourth plea, the defendant says, that the said rights, privileges, advantages, agreements, covenants and undertakings of the said William Robinson, in the said declaration mentioned, have not, nor have any of them devolved, been assigned, transferred or made over to the defendant, as in the declaration alleged.

"5. And for a fifth plea, the defendant says, that no expenses of keeping or maintaining said water power fit for use, as in said indenture provided, or of cleaning out the said races, or repairing the said dam, trestle work, tail-race, water wheels, mill house or other things in said indenture mentioned, have been made or incurred by the plaintiffs or otherwise.

"6. And for a sixth plea, the defendant says, that the said water power, races, dam, trestle work, water wheels, mill houses, &c., did not, nor did any of them become ruinous for want of needful reparations or amendments of the same, or of keeping or making the said water power fit for use, or of cleaning out the said race or repairing the said dam, &c., after the purchase by the defendant of the said land formerly owned by the said William Robinson ; and the said term of years, quarry rights, and other rights and privileges in and by the said indenture, demised, leased and granted to the said William Robinson, in and upon, and in respect to the said lands of the plaintiffs, were not, nor were any of them ever assigned, transferred or conveyed to the defendant.

"7. And for a seventh plea, the defendant says, that by the mutual consent and respective act of the said William W. Glenn, trustee, (before said alleged assignment from him to the said Merryman,) the said Thomas D. Cockey, and Sally, his wife, and of the said William Robinson, all the said water works, race, water wheels, mill house, trestle work, rights, privileges and easements in the declaration mentioned, were completely and permanently abandoned, and by reason thereof, the defendant afterwards was led to

believe no such supposed rights, privileges, servitudes or easements existed, and was induced by said abandonment to purchase the said land so formerly owned by the said William Robinson, for a large and valuable consideration paid by the defendant.

"8. And for an eighth plea, the defendant says, that before the happening of the alleged grievance in the declaration complained of, the plaintiffs wholly obstructed the said water power, and the flow of water in and upon said artificial race, trestle work and tail-race, and prevented the defendant from enjoying the same, or any part or share thereof, and deprived him of all benefit and advantage of the same, and of every of them."

The plaintiffs demurred to these pleas, and the Court below, (DOBBIN, J.,) for the reason that the declaration did not contain a sufficient cause of action overruled the demurrer, and gave judgment for the defendant. The plaintiffs appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ALVEY, J.

*J. T. B. Dorsey,* for the appellants.

*A. W. Machen,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is an action of covenant, on a deed of lease made the 10th day of April, 1857, between W. W. Gleen, trustee of the first part, Thomas D. Cockey and wife of the second part, and William Robinson of the third part. By it, the parties of the first and second parts, demised or granted to Robinson, certain quarry rights in the land of the parties of the first and second parts, for a term of fifteen years, subject to the payment of a rent or royalty, and with the privilege to the lessee, of putting an end at any time to the term by surrender.

The deed also recited, that the use of certain water works, race, water wheel and trestle work, existing on the land of the parties of the first and second parts, went with the quarry rights, and should be exclusively used by the lessee during the continuance of the term. And there was a clause by which it was declared that after the determination of the said quarry rights, &c., so granted and demised for the term of fifteen years, the party of the first part, (the trustee, with the consent of the parties of the second part,) granted to said Robinson, his heirs and assigns, owners of a tract of land adjoining, the *perpetual* right and privilege to use one-fourth of the water power, produced by means of said water works, for the sole purpose of pumping out water from the quarries, then or thereafter to be opened on Robinson's land, the party of the first part reserving the other three-fourths of said water power, for such uses as he, his heirs, successors or assigns might deem proper, for the uses of his trust. And in the last clause of the deed preceding the *in testimonium* clause, was the following stipulation :

"And it is hereby expressly agreed, that after the expiration of the exclusive right to use the whole of said water power hereinbefore granted and demised for fifteen years aforesaid, whether by effluxion of time, surrender or otherwise, that the expenses of keeping and maintaining said water power fit for use, and of cleaning out the race and repairing the dam, trestle work, tail-race, water wheel, mill house, &c., shall be borne by the party of the first part hereto, his heirs, successors and assigns, and by the party of the third part hereto, his heirs and assigns, owners of said lands, marked on said plat as William Robinson's land, in the proportion of three-fourths to the party of the first part, and one-fourth to the party of the third part."

The term of the lease, fifteen years, having expired, and the water works having been abandoned and permitted

Merryman, Trustee, *et al. vs.* Shipley.

to fall into decay, with the consent of all parties, this suit is brought to recover of the defendant, assignee of Robinson, *one-fourth part of the estimated cost of repairs.*

There is no averment in the declaration, either of the making of the repairs by the plaintiffs, and the defendant's refusal on demand to pay one-fourth of the expense; or the plaintiffs' readiness to repairs and the defendant's refusal to participate therein, and it is clear therefore, the only ground on which the action can be maintained is an agreement, either express or implied, on the part of Robinson to make such repairs.

The stipulation in the latter clause of the deed in regard to the proportion of expense to be borne by the respective parties, cannot certainly be construed as an *express agreement on the part of Robinson himself, to make the repairs;* nor do we find anything, either in the recitals or covenants, to support such a construction.

The inquiry then is, whether there is anything on the face of the deed from which an agreement can be fairly implied.

Now it appears by the recitals, that the parties owned adjoining tracts of land, through which flowed two streams of water, and the construction of water works was necessary in order to use said streams for the purpose of pumping water out of the quarries, which were then being or about to be worked on the two properties.

These water works were to be constructed by Robinson, and to be used by him exclusively during the term of the lease, and upon its expiration, either by the effluxion of time or otherwise, the use *of one-fourth of the water* was reserved to himself, his heirs and assigns *forever.*

Then follows the covenant by which the parties of the first and second part granted to Robinson, for fifteen years, the exclusive right to quarry marble and alum limestone on the land of said parties, upon the payment of a certain stipulated rent or royalty; and they also covenanted upon

the *expiration of the term* of fifteen years, that Robinson, and his heirs and assigns, should have the privilege of using *one-fourth* of the water produced by said water works.

The deed then closes with a stipulation in regard to the proportion of expense to be borne by each of the parties, in keeping the water works in repair.

We know of no rule of construction by which an agreement can be implied on the part of Robinson himself to keep the water works in repair after the expiration of his term of fifteen years. The works were upon the land of the plaintiffs and they were entitled to three-fourths of the water power, and were bound to pay three-fourths of the expense in keeping up the repairs, and there is as much reason for implying a contract on their part to make such repairs, as there is for implying a contract on the part of Robinson and his assigns. And it is obvious upon the facts stated in the declaration, the defendant would have as good a ground of action against the plaintiff for three-fourths of the estimated expense of the repairs which on all sides had been neglected, as the plaintiffs can have against him for the one-fourth.

So long as the deed remained operative, either party could make the repairs, and then compel the other to pay his proportion of the expense, but we find nothing in the deed to justify the construction contended for by the appellants and to permit them to maintain a suit for one-fourth of the estimated cost of repairs which had not been made.

Being of opinion that the demurrer to the defendant's pleas was properly overruled, for these reasons it becomes unnecessary to decide other questions which were so ably argued on both sides.

*Judgment affirmed.*

(Decided 1st March, 1877.)